## Case No. 13,026.

SMITH v. CLAFLIN et al.

[19 N. B. R. 523.] [1]

District Court. S. D. New York. Dec. 4, 1879.

BANKRUPTCY—ILLEGAL SALE—CONSPIRACY TO DEFRAUD—BILL FOR ACCOUNT.

Under a provisional warrant in a bankrupt proceeding the marshal seized certain goods which were in the possession of the firm of D. & A. under a claim of title derived by purchase from persons in the employ of the bankrupt. The goods were delivered to the assignee by the marshal. and have been sold for the benefit of the estate. D. & A. sued the marshal for conversion. and have recovered a judgment on the ground that the warrant did not authorize the seizure of goods in the actual possession of a third party under claim of right. though the title thereto might be in the bankrupt. That suit is still pending. in the state court on appeal. The price paid by the parties who held the goods came to C. & Co.. to whom the bankrupt was indebted under circumstances strongly tending to show that C. & Co. and one L., who was guarantor to C. & Co. for the bankrupt's indebtedness to them. had conspired with the purchasers to effect a fraudulent sale

[1] [Reprinted by permission.]

of the goods for the purpose of using the proceeds to pay the debt of the bankrupts to C. & Co.; *Held*, that although the transaction might be fraudulent as against the creditors and the assignee of the bankrupt, a bill in equity for an accounting and payment of the proceeds or value of the goods would not lie against C. & Co., L. and D. & A., because the assignee showed no legal injury to him by the fraud. his possession of the goods for the benefit of the estate being undisputed.

In equity.

D. M. Porter, for complainant.

W. H. Arnoux, S. Tenney, and J. A. Koones, for defendants.

CHOATE, District Judge. I do not see any principle on which this bill can be sustained upon the evidence. It is a bill brought by the assignee in bankruptcy of the firm of Lagrave & Otis, praying for an accounting and payment to the complainant of the proceeds of certain goods of the bankrupt, alleged to have been fraudulently and unlawfully taken and disposed of by the defendants in pursuance of a combination between them to that end. It appears that after Lagrave & Otis failed and had absconded, the defendant Landers, who was a relative of Lagrave, and who was liable as guarantor for Lagrave & Otis to the defendants H. B. Claflin & Co. to the amount of five thousand dollars—the entire debt of Lagrave & Otis to H. B. Claflin & Co. being eight thousand three hundred dollars—obtained the goods from the defendants, George Wagner and George L. Wagner, employés of Lagrave & Otis, in whose possession they were, upon a promise to pay them some one thousand two hundred dollars due to them from Lagrave & Otis, with the avowed purpose of protecting himself against his guaranty by disposing of the goods and paying the proceeds to the defendants, H. B. Claflin & Co., upon the debt of Lagrave & Otis to them. The goods were worth about seven thousand dollars. The Wagners clearly had no right to sell them to Landers in this way, as he well knew, but the sale was made by a transfer of the bills of lading about one or two hours before the creditors' petition in bankruptcy was filed. Landers was himself a salesman in the employ of the defendants H. B. Claflin & Co. The goods were taken to H. B. Claflin's warehouse, and for the sake of secrecy the marks on the cases were altered; they were then removed to H. B. Claflin's store upon a consent obtained by Landers from one of their employés. and examined and repacked by Landers, and. with the aid of other persons in the employ of that firm, sent to another warehouse. The petition in bankruptcy was filed May 30, 1872. On the 10th of June, 1872. the goods being in warehouse, Landers sought an introduction to Mr. Doyle, of the firm of Doyle & Adolphi, who were also made defendants in this suit. and who were dealers in goods of the same kind as those thus taken by the defendant Landers. This introduction was made at H. B. Claflin & Co.'s store by one Wilkinson, a salesman of H. B.

Claflin & Co. And thereupon the defendant Landers offered the goods to Doyle for five thousand dollars, exhibiting the invoice of the goods, and Doyle thereupon agreed to purchase them upon a credit of four months, and he gave his firm's note for five thousand dollars at four months. This sale was made without an examination of the goods and with no previous acquaintance between Doyle and Landers, and upon Wilkinson's guaranty that it was all right. A few days after, the warehouse receipts were delivered to Doyle & Adolphi by Wilkinson, who held them at the request of Landers, so that Landers might not be found in the apparent possession of the goods. While the goods were still in the warehouse they were seized by the United States marshal, who held a provisional warrant in this bankruptcy proceeding. Landers sold the note immediately to the defendant Baishfield, the cashier of H. B. Claflin & Co., for four thousand eight hundred dollars. Baishfield drew the money out of his account with H. B. Claflin & Co., in which he had standing to his credit about twelve thousand dollars. Landers immediately paid the amount he received, four thousand eight hundred dollars, to H. B. Claflin & Co. on account of the debt of Lagrave & Otis. The note was paid at maturity. On the 28th of June, 1872, Doyle & Adolphi sued the United States marshal in a state court for the conversion of the goods, alleging that they were the lawful owners and in the lawful possession thereof. The marshal defended on the ground that Doyle & Adolphi had no title, and that he was justified under the provisional warrant in seizing the goods as the property of the bankrupts. The first trial took place in June, 1875, resulting in a verdict for the defendant by direction of the court. The verdict was set aside and a second trial took place in December, 1876, which resulted in a verdict for the plaintiffs, Doyle & Adolphi, for seven thousand four hundred and twenty-three dollars. The jury found as matter of fact that Doyle & Adolphi were in possession, claiming to hold the goods in their own right, and that the sale to them was not a sham sale—that is, that they were not acting in the matter merely for Landers or H. B. Claflin & Co.—and the court instructed the jury that the provisional warrant did not justify the marshal in seizing goods in possession, not of the bankrupts, but of a third party claiming them as owner for himself. That suit is still pending on appeal in the court of appeals. On the 10th of September, 1872, an order was entered by this court in the matter of Lagrave & Otis, bankrupts, upon the written consent of the attorneys who appeared for Doyle & Adolphi in their action against the marshal, directing that the assignee in bankruptcy sell at public auction the goods in question then being in his possession, and hold the proceeds according to the provisions of the bankrupt act [of 1867 (14 Stat. 517)]. The goods having been seized by the marshal, were by him delivered to the assignee.

I think it is a fatal objection to the maintenance of this action that the assignee in bankruptcy has sustained no damage whatever by the wrongful acts complained of. Without question the transfer by the Wagners to Landers was a fraud upon the creditors of the bankrupt, and was also without any authority derived by them from the instructions of Lagrave & Otis or from their power as agents of that firm. So far as these three defendants were concerned, the operation differed little, if at all, from robbery. Nor do I see how the defendants H. B. Claflin & Co. could hold on to the proceeds of the goods as against the assignee, if the payment to them operated to deprive him of the goods. Those proceeds are clearly traced into their hands. They gave no consideration for them, and they can hardly be held ignorant of the proceedings going on in their own place of business, transacted by their own employés for their own benefit, and of which they took and held the fruits. Nor, it seems, did Doyle & Adolphi take, as against the assignee, any better title than Landers, who, having purchased from agents having no authority to sell as this sale was made, took no title. And even if he took a technical title, which I think he did not, the very suspicious circumstances under which they bought, and not even relying on his apparent possession and ownership, but on Wilkinson's guaranty, would, it seems, have made their title void as against the assignee, so that he could, after demand, have recovered the goods from them in a proper form of action. If they came not unlawfully into possession of the goods, they could not have held them against the assignee after demand. But the state court has held— and there is no occasion here to question the correctness of the ruling—that the provisional warrant did not authorize the marshal to take the goods from them if they were in possession, claiming title in them for themselves. And on the ground that the title of Doyle & Adolphi, that is, their possession under a claim of title, was a good enough title against a trespasser, the suit was decided against the marshal. This decision appears to be in conformity with the construction given by the supreme court of the United States to those parts of the bankrupt law defining the summary jurisdiction of the district court as a court of bankruptcy, which has been held not to extend to the determination of questions of title between the bankrupt and third parties. In re Waitzfelder [Case No. 17,048]. But the fact that the marshal in this proceeding was a trespasser did not affect the right of the assignee to the possession of the goods. He did not instigate the seizure by the marshal, and is not prejudiced by it. As the court held the law, the marshal, in seizing the goods, was not acting under his warrant at all. When, therefore, the assignee received the goods from the marshal he did not adopt the act of the marshal by which the marshal obtained them. If a thief had stolen them from Doyle & Adolphi, and the assignee found them in the thief's

.possession, I see no reason why he could not take them as the goods of the bankrupt if the thief gave them up to him, without being prejudiced in any way by the thief's acts. I know of no principle on which the marshal can call on the assignee, whatever may be the final result of the suit against the firm, for a return of the goods or their proceeds, or for reimbursement of his loss, if it proves such. Nor has this court any duty of protecting the marshal against the legal consequences of his unlawful act. If this is so, then the assignee, notwithstanding all the wrongs intended by the defendants, is still in undisturbed possession, for the benefit of creditors, of the goods in question, and therefore has sustained no loss or damage. If loss results to the marshal this suit is not brought to relieve him, if indeed he can be relieved at all. And if the marshal finally prevails in his defence, it is of no concern to this complainant how the defendants may adjust the matter among themselves.

Bill dismissed without costs.